**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **RAMIRO ORTIZ,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:23-cv-00008** |
| | § | |
| **ATLANTIC CASUALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| *Defendant.* | § | |

## <u>DEFENDANT ATLANTIC CASUALTY INSURANCE COMPANY'S</u>
## <u>ORIGINAL ANSWER</u>

TO THE HONORABLE DIANA SALDAÑA, U.S. DISTRICT JUDGE:

Defendant Atlantic Casualty Insurance Company (Atlantic Casualty) files this Answer to Plaintiff's Original Petition, Jury Demand and Request for Disclosure[1] (the Petition) and respectfully shows the Court as follows:

### I.
### <u>ANSWER TO PLAINTIFF'S ORIGINAL PETITION</u>

#### <u>DISCOVERY CONTROL PLAN</u>

1.     Plaintiff intends to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.14.

*Answer: The Discovery Control Plan section of the Petition does not contain an allegation and therefore does not require an admission or denial.*

#### <u>PARTIES</u>

2.     Plaintiff, Ramiro Ortiz, resides in Webb County, Texas.

*Answer: Atlantic Casualty admits that Ramiro Ortiz is domiciled in Texas and is a resident*

---

[1] Filed in Cause 2022CVH001724D1; *Ramiro Ortiz v. Atlantic Casualty Insurance Company*; In the 49th Judicial District Court of Webb County, Texas.

*and citizen of the State of Texas.*

3.      Defendant, Atlantic Casualty Insurance Company, is a foreign insurance company, engaged in the business of insurance in the State of Texas.  Plaintiff requests service of citation upon Atlantic Casualty, through its registered agent for service listed with the Texas Department of Insurance: **Angela B. Grady, Vice President Claims, Atlantic Casualty Insurance Company, 400 Commerce Court, Goldsboro, NC 27534.**  Plaintiff requests service at this time.

*Answer:  Atlantic Casualty admits that it is an insurance company, formed under North Carolina law, authorized as a surplus lines insurer in the State of Texas.  The remainder of paragraph 3 of the Petition does not contain allegations and therefore does not require an admission or denial.*

<u>JURISDICTION</u>

4.      The Court has jurisdiction over Atlantic Casualty because this Defendant engages in the business of insurance in the State of Texas, and the causes of action arise out of Atlantic Casualty's business activities in the state, including those in Webb County, Texas, with reference to this specific case.

*Answer:  Atlantic Casualty admits that jurisdiction is proper in the United States District Court for the Southern District of Texas, Laredo Division, because there is complete diversity of citizenship, the amount in controversy exceeds $75,000, and the 49th District Court of Webb County, Texas, is located in this district and division.  Atlantic Casualty denies any remaining allegation in this paragraph.*

<u>VENUE</u>

5.      Venue is proper in Webb County, Texas because the insured property is located in Webb County, Texas, and all or a substantial part of the events giving rise to this lawsuit occurred

in Webb County, Texas.  TEX. CIV. PRAC. & REM. CODE § 15.032.

> *Answer:  Atlantic Casualty admits that the property in question is located in Webb County, Texas.  Venue is proper in the United States District Court for the Southern District of Texas, Laredo Division, because there is complete diversity of citizenship, the amount in controversy exceeds $75,000, and the 49th District Court of Webb County, Texas, is located in this district and division.  Atlantic Casualty denies any remaining allegation in this paragraph.*

<u>FACTS</u>

6.    Plaintiff asserts claims for breach of contract, common law bad faith, violations of sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA.

> *Answer:  Atlantic Casualty admits that Plaintiff's Petition asserts claims for breach of contract, common law bad faith, violations of sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA.  Atlantic Casualty denies it is liable for those alleged causes of action.*

7.    Plaintiff owns Atlantic Casualty Insurance Company insurance policy, number M226000444-1 ("the Policy"). At all relevant times, Plaintiff owned the insured premises located at 708 Chaparral Street, Laredo Texas 78041 ("the Property").

> *Answer:  Atlantic Casualty admits that it issued Policy No. M226000444-1 to Ramiro Ortiz. Atlantic Casualty is without sufficient information to admit or deny the allegations in the last sentence of paragraph 7 of the Petition.*

8.    Atlantic Casualty Insurance Company or its agent sold the Policy, insuring the Property, to Plaintiff.  Atlantic Casualty Insurance Company represented to Plaintiff that the Policy included hail and windstorm.  During the policy period from July 09, 2020 to July 09, 2021, the

Property sustained extensive damage resulting from a severe storm that passed through the Webb County, Texas area.  Atlantic Casualty assigned a date of loss of May 17, 2021, to Plaintiff's claim.

*Answer:  Atlantic Casualty admits that it issued Policy No. M226000444-1 to Ramiro Ortiz and that the Policy speaks for itself.  Atlantic Casualty admits it assigned a date of loss of May 17, 2021 to Plaintiff's claim based on a property loss notice submitted on behalf of Plaintiff Ramiro Ortiz.  Atlantic Casualty denies all other averments in paragraph 8 of the Petition.*

9.      In the aftermath of the hail and windstorm, Plaintiff submitted a claim to Atlantic Casualty against the Policy for damage to the Property.  Atlantic Casualty assigned claim number 01-TX-002717 to Plaintiff's claim.

*Answer:  Atlantic Casualty admits Plaintiff submitted a claim to Atlantic Casualty and Claim No. 01-TX-002717 was assigned to Plaintiff's claim.  Atlantic Casualty denies all other averments in paragraph 9 of the Petition.*

10.      Plaintiff asked Atlantic Casualty to cover the cost of damage to the Property pursuant to the Policy.

*Answer: Atlantic Casualty admits Plaintiff submitted a claim to Atlantic Casualty.  Atlantic Casualty denies all other averments in paragraph 10 of the Petition.*

11.      Atlantic Casualty hired or assigned its agent, Epperson, to inspect and adjust the claim.  Epperson conducted an inspection and according to the information contained in his estimate.  Epperson's findings reflected that there was no storm-related damage.  Therefore, Plaintiff was left without adequate funds to make repairs on the entirety of his claim.

*Answer: Atlantic Casualty denies Epperson was its agent as stated because Epperson was an independent adjuster.  Atlantic Casualty admits the other averments contained in the*

*first and second sentences of paragraph 11 of the Petition.  Atlantic Casualty denies the*

*averments contained in the third sentence of paragraph 11 of the Petition as worded, and*

*admits that Epperson's report speaks for itself.  Atlantic Casualty denies the allegations in*

*the last sentence of paragraph 11 of the Petition.*

12.     Atlantic Casualty, through its agent, Epperson, conducted a substandard and improper inspection of the Property, which grossly undervalued the cost of repairs in its estimate and yielded an unrealistic amount to underpay coverage.

*Answer:  Atlantic Casualty denies the allegations in paragraph 12 of the Petition.*

13.     Atlantic Casualty and Epperson have ultimately refused full coverage which includes, but is not limited to, the roof, vents, flashings, windows, window screens, fascia, gutters, downspouts and HVAC system.

*Answer:  Atlantic Casualty denies the allegations in paragraph 13 of the Petition.*

14.     The damage to Plaintiff's Property is currently estimated at $821,369.26.

*Answer:  Atlantic Casualty admits that the Petition claims that the alleged damage to the*

*property is estimated at $821,369.26.*

15.     Epperson had a vested interest in undervaluing the claims assigned to him by Atlantic Casualty in order to maintain his employment.  The disparity in the number of damaged items in his report compared to that of the third-party inspector's as well as the difference in valuation is evidence of unfair claims handling practices on the part of Epperson.

*Answer:  Atlantic Casualty denies the allegations in paragraph 15 of the Petition.*

16.     Furthermore, Epperson was aware of Plaintiff's deductible prior to inspecting the Property.  Epperson had advanced knowledge of the damages he needed to document in order to be able to deny the claim.

*Answer:  Atlantic Casualty denies the allegations in paragraph 16 of the Petition.*

17.     Epperson misrepresented the actual amount of damage Plaintiff's Property sustained in addition to how much it would cost to repair the damage.  Epperson made these misrepresentations as a licensed Texas adjuster with the hope that Plaintiff would rely on his expertise and accept the bad faith estimate as a true representation of the damages.

*Answer:  Atlantic Casualty denies the allegations in paragraph 17 of the Petition.*

18.     After reviewing Plaintiff's Policy, Epperson misrepresented that the damage was caused by non-covered perils.  Epperson used his expertise to fabricate plausible explanations for why visible damage to Plaintiff's Property would not be covered under the policy.

*Answer:  Atlantic Casualty denies the allegations in paragraph 18 of the Petition.*

19.     As stated above, Atlantic Casualty and Epperson improperly and unreasonably adjusted Plaintiff's claim.  Without limitation, Atlantic Casualty and Epperson misrepresented the cause of, scope of, and cost to repair damages to Plaintiff's Property, as well as the amount of insurance coverage for Plaintiff's claim or loss under the Policy.

*Answer:  Atlantic Casualty denies the allegations in paragraph 19 of the Petition.*

20.     Atlantic Casualty and Epperson made these and other false representations to Plaintiff, either knowingly or recklessly, as a positive assertion, without knowledge of the truth. Atlantic Casualty and Epperson made these false representations with the intent that Plaintiff acts in accordance with the misrepresentations regarding the grossly deficient damage and repair estimates prepared by Epperson.

*Answer:  Atlantic Casualty denies the allegations in paragraph 20 of the Petition.*

21.     Plaintiff relied on Atlantic Casualty and Epperson's misrepresentations, including but not limited to those regarding coverage, the cause of, scope of, and cost to repair the damage

to Plaintiff's Property.   Plaintiff's damages are the result of Plaintiff's reliance on these misrepresentations.

*Answer:  Atlantic Casualty denies the allegations in paragraph 21 of the Petition.*

22.    Upon receipt of the inspection and estimate reports from Epperson, Atlantic Casualty failed to assess the claim thoroughly.  Based upon Epperson's grossly unreasonable, intentional, and reckless failure to investigate the claim properly prior to underpaying coverage, Atlantic Casualty failed to provide coverage due under the Policy, and Plaintiff suffered damages.

*Answer:  Atlantic Casualty denies the allegations in paragraph 22 of the Petition.*

23.    Because Atlantic Casualty and Epperson failed to provide coverage for Plaintiff's insurance claim, Plaintiff has been unable to complete any substantive repairs to the Property.  This has caused additional damage to Plaintiff's Property.

*Answer:  Atlantic Casualty denies the allegations in paragraph 23 of the Petition.*

24.    Furthermore, Atlantic Casualty and Epperson failed to perform their contractual duties to Plaintiff under the terms of the Policy.  Specifically, Epperson performed an unreasonable and substandard inspection that allowed Atlantic Casualty to refuse to pay full proceeds due under the Policy, although due demand was made for an amount sufficient to cover the damaged Property, and all conditions precedent to recover upon the Policy were carried out by Plaintiff.

*Answer:  Atlantic Casualty denies the allegations in paragraph 24 of the Petition.*

25.    Atlantic Casualty's and Epperson's misrepresentations, unreasonable delays, and continued denials constitute a breach of the statutory obligations under Chapters 541 and 542 of the Texas Insurance Code.  Thus, the breach of the statutory duties constitutes the foundation of a breach of the insurance contract between Defendant and Plaintiff.

*Answer:  Atlantic Casualty denies the allegations in paragraph 25 of the Petition.*

26.     Atlantic Casualty's and Epperson's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.   TEX. INS. CODE §541.060(a) (1).   Atlantic Casualty and Epperson have failed to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy.  Specifically, Atlantic Casualty and Epperson have failed to, in an honest and fair manner, balance their own interests in maximizing gains and limiting disbursements, with the interests of Plaintiff by failing to timely pay Plaintiff coverage due under the Policy.

*Answer:  Atlantic Casualty denies the allegations in paragraph 26 of the Petition.*

27.     Atlantic Casualty's and Epperson's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a) (2) (A).   Atlantic Casualty and Epperson failed to provide Plaintiff a reasonable explanation for underpayment of the claim.

*Answer:  Atlantic Casualty denies the allegations in paragraph 27 of the Petition.*

28.     Additionally, after Atlantic Casualty received statutory demand on or about October 7, 2022, Atlantic Casualty has not communicated that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for failing to settle Plaintiff's claim properly.

*Answer:  Atlantic Casualty denies the allegations in paragraph 28 of the Petition.*

29.     Atlantic Casualty's and Epperson's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.   TEX. INS. CODE §541.060(a) (4).   Epperson performed a biased and intentionally substandard inspection designed to allow Atlantic Casualty to refuse to provide full coverage to Plaintiff under the Policy.

*Answer:  Atlantic Casualty denies the allegations in paragraph 29 of the Petition.*

30.     Specifically, Atlantic Casualty and Epperson performed an outcome-oriented investigation of Plaintiff's claims, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property.

*Answer:  Atlantic Casualty denies the allegations in paragraph 30 of the Petition.*

31.     Atlantic Casualty's and Epperson's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.055.  Due to Epperson's subpar inspection, Atlantic Casualty failed to reasonably accept or deny Plaintiff's full and entire claim within the statutorily mandated time after receiving all necessary information.

*Answer:  Atlantic Casualty denies the allegations in paragraph 31 of the Petition.*

32.     Atlantic Casualty's and Epperson's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.056.  Due to Epperson's intentional undervaluation of Plaintiff's claims, Atlantic Casualty failed to meet its obligations under the Texas Insurance Code regarding timely payment of the claim.  Specifically, Epperson's understatement of the damage to the Property caused Atlantic Casualty to delay full payment of Plaintiff's claim longer than allowed, and Plaintiff has not received rightful payment for Plaintiff's claim.

*Answer:  Atlantic Casualty denies the allegations in paragraph 32 of the Petition.*

33.     Atlantic Casualty's and Epperson's wrongful acts and omissions have forced Plaintiff to retain the professional services of the attorneys and law firm representing him with respect to these causes of action.

*Answer:  Atlantic Casualty denies the allegations in paragraph 33 of the Petition.*

## CAUSES OF ACTION AGAINST DEFENDANT
## ATLANTIC CASUALTY INSURANCE COMPANY

34.     All paragraphs from the fact section of this petition are hereby incorporated into

this section.

*Answer:  Paragraph 34 of the Petition does not contain allegations and therefore does not require an admission or denial.*

<u>BREACH OF CONTRACT</u>

35.    Atlantic Casualty is liable to Plaintiff for intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.  It follows, then, that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between Atlantic Casualty and Plaintiff.

*Answer:  Atlantic Casualty denies the allegations in paragraph 35 of the Petition.*

36.    Atlantic Casualty's failure and/or refusal to pay adequate coverage as obligated under the Policy, and under the laws of the State of Texas, constitutes a breach of Atlantic Casualty's insurance contract with Plaintiff.

*Answer:  Atlantic Casualty denies the allegations in paragraph 36 of the Petition.*

<u>NON-COMPLIANCE WITH THE TEXAS INSURANCE CODE:<br>UNFAIR SETTLEMENT PRACTICES</u>

37.    Atlantic Casualty's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are actionable by TEX. INS. CODE §541.151.

*Answer:  Atlantic Casualty denies the allegations in paragraph 37 of the Petition.*

38.    Atlantic Casualty's unfair settlement practice of misrepresenting to Plaintiff material facts relating to coverage constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a) (1).

*Answer:  Atlantic Casualty denies the allegations in paragraph 38 of the Petition.*

39.    Atlantic Casualty's unfair settlement practice of failing to attempt in good faith to

make a prompt, fair, and equitable settlement of the claim, even though Atlantic Casualty's liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a) (2) (A).

*Answer:  Atlantic Casualty denies the allegations in paragraph 39 of the Petition.*

40.     Atlantic Casualty's unfair settlement practice of failing to provide Plaintiff a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment and denial of the claim, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a) (3).

*Answer:  Atlantic Casualty denies the allegations in paragraph 40 of the Petition.*

41.     Atlantic Casualty's unfair settlement practice of refusing to pay Plaintiff's full claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a) (7).

*Answer:  Atlantic Casualty denies the allegations in paragraph 41 of the Petition.*

## NON-COMPLIANCE WITH THE TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

42.     Atlantic Casualty's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are actionable under TEX. INS. CODE §542.060.

*Answer:  Atlantic Casualty denies the allegations in paragraph 42 of the Petition.*

43.     Atlantic Casualty's delay in paying Plaintiff's claim following receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided, constitutes a non-prompt payment of the claim.  TEX. INS. CODE §542.058.

*Answer:  Atlantic Casualty denies the allegations in paragraph 43 of the Petition.*

<u>BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING</u>

44.      Atlantic Casualty's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to an insured in insurance contracts.

*Answer:  Atlantic Casualty denies the allegations in paragraph 44 of the Petition.*

45.      Atlantic Casualty's failure to adequately and reasonably investigate and evaluate Plaintiff's claim, even though Atlantic Casualty knew or should have known by the exercise of reasonable diligence that liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

*Answer:  Atlantic Casualty denies the allegations in paragraph 45 of the Petition.*

<u>DTPA VIOLATIONS</u>

46.      Atlantic Casualty's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiff is a consumer of goods and services provided by Atlantic Casualty pursuant to the DTPA.  Plaintiff has met all conditions precedent to bring this cause of action against Atlantic Casualty.  Specifically, Atlantic Casualty's violations of the DTPA include, without limitation, the following matters:

A.      By its acts, omissions, failures, and conduct, Atlantic Casualty have violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA. Atlantic Casualty's violations include, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiff's claim, (2) failure to give Plaintiff the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiff's

property when liability has become reasonably clear, which gives Plaintiff the right to recover under section 17.46(b)(2).

B.     Atlantic Casualty represented to Plaintiff that the Policy and Atlantic Casualty's adjusting agent and investigative services had characteristics or benefits they did not possess, which gives Plaintiff the right to recover under section 17.46(b)(5) of the DTPA.

C.     Atlantic Casualty represented to Plaintiff that Atlantic Casualty's Policy and adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

D.     Atlantic Casualty advertised the Policy and adjusting services with the intent not to sell them as advertised, in violation of section 17.46(b)(9) of the DTPA.

E.     Atlantic Casualty breached an express warranty that the damages caused by wind and hail would be covered under the Policy.  This breach entitles Plaintiff to recover under sections 17.46(b) (12) and (20) and 17.50(a) (2) of the DTPA.

F.     Atlantic Casualty's actions are unconscionable in that Atlantic Casualty took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.  Atlantic Casualty's unconscionable conduct gives Plaintiff a right to relief under section 17.50(a) (3) of the DTPA; and

G.     Atlantic Casualty's conduct acts, omissions, and failures, as described in this

petition, are unfair practices in the business of insurance in violation of section

17.50(a)(4) of the DTPA.

*Answer:  Atlantic Casualty denies the allegations contained in paragraph 46 of the*
*Petition.*

47.     Each of the above-described acts, omissions, and failures of Atlantic Casualty is a

producing cause of Plaintiff's damages.   All of Atlantic Casualty's acts, omissions, and failures

were committed "knowingly" and "intentionally," as defined by the Texas Deceptive Trade

Practices Act.

*Answer:  Atlantic Casualty denies the allegations in paragraph 47 of the Petition.*

<u>KNOWLEDGE</u>

48.     Defendant made each of the acts described above, together and singularly,

"knowingly," as defined in the Texas Insurance Code, and each was a producing cause of

Plaintiff's damages described herein.

*Answer:  Atlantic Casualty denies the allegations in paragraph 48 of the Petition.*

<u>WAIVER AND ESTOPPEL</u>

49.     Defendant waived and is estopped from asserting any coverage defenses,

conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter

to Plaintiff.

*Answer:  Atlantic Casualty denies the allegations in paragraph 49 of the Petition.*

<u>DAMAGES</u>

50.     The damages caused to the Property have not been properly addressed or repaired

since the claim was made, causing further damage to the Property, and undue hardship and burden

to Plaintiff.  These damages are a direct result of Defendant's mishandling of Plaintiff's claims in violation of the laws set forth above.

*Answer:  Atlantic Casualty denies the allegations in paragraph 50 of the Petition.*

51.    Plaintiff currently estimates that actual damages to the Property under the Policy are $821,369.26.

*Answer:  Atlantic Casualty admits that the Petition claims that the alleged damage to the property is estimated at $821,369.26.*

52.    Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained.  The above-described acts, omissions, failures, and conduct of Defendant have caused Plaintiff's damages, which include, without limitation, the cost to properly repair Plaintiff's Property and any investigative and engineering fees incurred.

*Answer:  Atlantic Casualty denies the allegations in paragraph 52 of the Petition.*

53.    For breach of contract, Plaintiff is entitled to regain the benefit of his bargain, which is the amount of his claims, consequential damages, together with attorney's fees.

*Answer:  Atlantic Casualty denies the allegations in paragraph 53 of the Petition.*

54.    For non-compliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of benefits owed pursuant to the Policy, mental anguish, court costs, and attorney's fees.  For knowing and intentional conduct of the acts described above, Plaintiff asks for three (3) times his actual damages.  TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(b) (1).

*Answer:  Atlantic Casualty denies the allegations in paragraph 54 of the Petition.*

55.    For non-compliance with Texas Insurance Code, Prompt Payment of Claims,

Plaintiff is entitled to the amount of his claims, plus an eighteen percent (18%) per annum penalty on those claims, as damages, as well as pre-judgment interest and reasonable attorney's fees.  TEX. INS. CODE §542.060.

*Answer:  Atlantic Casualty denies the allegations in paragraph 55 of the Petition.*

56.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of duty, such as additional costs, economic hardship, losses due to the nonpayment of the amount Atlantic Casualty owed, exemplary damages, and damages for emotional distress.

*Answer:  Atlantic Casualty denies the allegations in paragraph 56 of the Petition.*

57.     Defendant's breach of the common law duty of good faith and fair dealing was committed intentionally, with a conscious indifference to Plaintiff's rights and welfare, and with "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies Code. These violations are the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages.  Therefore, Plaintiff seeks the recovery of exemplary damages in an amount determined by the finder of fact sufficient to punish Defendant for their wrongful conduct and to set an example to deter Defendant and others from committing similar acts in the future.

*Answer:  Atlantic Casualty denies the allegations in paragraph 57 of the Petition.*

58.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorneys subscribed to this pleading.  Therefore, under Chapter 38 of the Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance Code, and section 17.50 of the DTPA, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any

appeals to the Court of Appeals and/or the Supreme Court of Texas.

*Answer:  Atlantic Casualty denies the allegations in paragraph 58 of the Petition.*

59.    As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court.  As required by Rule 47(b)(1) of the Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks only monetary relief over $250,000.00 but not more than $1,000,000.00, including interest statutory or punitive damages and penalties, and attorney fees and costs.  A jury will ultimately determine the monetary relief actually awarded, however. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

*Answer: Atlantic Casualty does not dispute that Plaintiff pleaded monetary relief between $250,000 and $1,000,000, but denies that the damages in this case, if any, fall within this range and denies that Plaintiff is entitled to such relief.  The last sentence of paragraph 59 of the Petition does not contain allegations and therefore does not require an admission or denial.*

## REQUESTS FOR DISCLOSURE

60.    Under Texas Rules of Civil Procedure 190 and 194, Plaintiff requests that Defendant disclose, within thirty (30) days from the date the first answer is filed, the information or material described in Rules 190.2(b)(6) and 194.2.

*Answer:  Paragraph 60 of the Petition does not contain allegations and therefore does not require an admission or denial.*

## JURY DEMAND

61.    Plaintiff hereby requests a jury trial for all causes of action alleged herein, tried before a jury consisting of citizens residing in Webb County, Texas.  Plaintiff hereby tenders the

appropriate jury fee.

*Answer:  Paragraph 61 of the Petition does not contain allegations and therefore does not require an admission or denial.*

## PRAYER

Plaintiff prays that Defendant, Atlantic Company Insurance Company, be cited and served to appear and that upon trial hereof, , recovers from Defendant, Atlantic Company Insurance Company such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, as to actual, consequential, and treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages as may be found.  In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court expended on Plaintiff's behalf, for pre-judgment and post-judgment interest as allowed by law, and for any other relief, at law or in equity, to which Plaintiff may show he is so justly entitled.

*Answer:  Atlantic Casualty denies that Plaintiff is entitled to the relief requested in the section entitled 'Prayer' in the Petition.*

## II.
## AFFIRMATIVE DEFENSES

1.      In addition to the foregoing responses, Atlantic Casualty asserts the following affirmative defenses.  Atlantic Casualty reserves the right to amend its answer to plead additional affirmative defenses as may be warranted.  Any defense asserted herein is pleaded in the alternative under the law, if necessary or appropriate.  Under FED. R. CIV. P. 10(c), Atlantic Casualty adopts by reference and fully incorporates for all purposes all coverage defenses asserted in its pleadings or motions.

2.      Plaintiff fails to state a claim for which relief may be granted.

3.      Atlantic Casualty issued Policy Nos. M226000444-0 (effective July 9, 2019 to July 9, 2020) and M226000444-1 (effective July 9, 2020 to July 9, 2021) to named insured Ramiro Ortiz (collectively herein, the Policies).  Atlantic Casualty avers that the best evidence of the terms of the Policies are contained in the Policies and denies any allegations which may tend to enlarge, contradict or contravene the terms, conditions, exclusions, limitations of liability, as to the amount or otherwise, as therein provided.  Atlantic Casualty specifically pleads the terms, conditions, provisions, exclusions, and limitations of the Policies as if copied herein in full and places Plaintiff on full proof of any allegations seeking to infer liability by virtue of the existence of said Policies of insurance.

4.      The Policies contain the Building and Personal Property Coverage Form CP 00 10 10 12 that has the following language regarding payment for physical loss or damage to covered property:

> ### A.  Coverage
>
> *We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.*
>
> \*

5.      There is no coverage under the Policies to the extent the alleged damage was not caused by or resulting from a Covered Cause of Loss.

> ### E.  Loss Conditions
>
> *The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.*
>
> \*
>
> *3.  Duties In The Event Of Loss Or Damage*
>     *a.  You must see that the following are done in the event of loss or damage to Covered Property:*
>         \*

ATLANTIC CASUALTY INSURANCE COMPANY'S ORIGINAL ANSWER – PAGE 19

(2) *Give us prompt notice of the loss or damage. Include a description of the property involved.*

(3) *As soon as possible, give us a description of how, when and where the loss or damage occurred.*

(4) *Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.*

(5) *At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*

(6) *As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.*
*Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*

(7) *Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*

(8) *Cooperate with us in the investigation or settlement of the claim.*

\*

6.    There is no coverage to the extent one or more conditions to coverage were not met.

7.    The Polices contains the following coinsurance provision:

**F.  *Additional Conditions***
*The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:*
*1.  Coinsurance*
*If a Coinsurance percentage is shown in the Declarations, the following condition applies:*
*a.  We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.*

> *Instead, we will determine the most we will pay using the following steps:*
> *(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;*
> *(2) Divide the Limit of Insurance of the property by the figure determined in step (1);*
> *(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in step (2); and*
> *(4) Subtract the deductible from the figure determined in step (3).*
> *We will pay the amount determined in step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.*
> *b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.*
>
> *\**

8. In the unlikely event that it is determined that there is coverage for some or all of the damages alleged, any such coverage is subject to the coinsurance conditions.

9. Plaintiff's reported damage is not covered because it commenced before the Policies went into effect or after the Policies ended:

> ***COMMERCIAL PROPERTY CONDITIONS***
>
> *This Coverage Part is subject to the following conditions, the Common Policy Condition and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.*
>
> *\**
>
> ***H.  POLICY PERIOD, COVERAGE TERRITORY***
>
> *Under this Coverage Part:*
>
> *1. We cover loss or damage commencing:*
> *a.  During the policy period shown in the Declarations;*
>
> *\**

*CP 00 90 07 88*

10.     The Policies provide coverage for loss or damage commencing during the policy periods of July 9, 2019 to July 9, 2020 and July 9, 2020 to July 9, 2021 (the Policy Periods).  The damage alleged by Plaintiff did not commence during these timeframes.

11.     Plaintiff's reported damage did not result from a covered cause of loss or it is limited or excluded as follows:

### CAUSES OF LOSS – SPECIAL FORM

**A. *Covered Causes Of Loss***

*When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.*

*\**

**B. *Exclusions***

*1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*

*a.  Ordinance Or Law*
*The enforcement of or compliance with any ordinance or law:*
*(1) Regulating the construction, use or repair of any property; or*
*(2) Requiring the tearing down of any property, including the cost of removing its debris.*
*This exclusion, Ordinance Or Law, applies whether the loss results from:*
*(a) An ordinance or law that is enforced even if the property has not been damaged; or*
*(b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demotion of property, or removal of its debris, following a physical loss to that property…*

\*

g.  *Water*
   *(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);*
   *(2) Mudslide or mudflow;*
   *(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;*
   *(4) Water under the ground surface pressing on, or flowing or seeping through:*
      *(a) Foundations, walls, floors or paved surfaces;*
      *(b) Basements, whether paved or not; or*
   *(c) Doors, windows or other openings; or*
   *(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.*

   *This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.*

   *But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).*

h.  *"Fungus," Wet Rot, Dry Rot and Bacteria*
   *Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.*
   *But if "fungus," wet or dry rot or bacteria result in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."*

   *This exclusion does not apply:*
   *(1) When "fungus," wet or dry rot or bacteria result from fire or lightning; or*
   *(2) To the extent that coverage is provided in the*

> *Additional Coverage, Limited Coverage For "Fungus," Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.*
>
> *Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area.*
>
> \*
>
> 2. *We will not pay for loss or damage caused by or resulting from any of the following:*
>
> > \*
>
> d.(1)  *Wear and tear;*
> (2)  *Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;*
>
> > \*
>
> (4)  *Settling, cracking, shrinking or expansion*
>
> > \*
>
> (6)  *Mechanical breakdown, including rupture or bursting caused by centrifugal force…*
>
> (7)  *The following causes of loss to personal property; (a) Dampness or dryness of atmosphere; (b) Changes in or extremes of temperature; or (c) Marring or scratching.*
>
> *But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.*
>
> \*
>
> f.  *Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.*

ATLANTIC CASUALTY INSURANCE COMPANY'S ORIGINAL ANSWER – PAGE 24

*

 *j.*  *Rain, snow, ice or sleet to personal property in the open.*

    *

 *m.*  *Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.*

    *

*3.* *We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.*

 *a.* *Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.*

 *b.* *Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.*

 *c.* *Faulty, inadequate or defective:*
  *(1) Planning, zoning, development, surveying, siting;*
  *(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;*
  *(3) Materials used in repair, construction, renovation or remodeling; or*
  *(4) Maintenance;*
  *of part or all of any property on or off the described premises*

    *

**C. Limitations**
*The following limitations apply to all policy forms and endorsements, unless otherwise stated:*

*1. We will not pay for loss of or damage to property, as described and limited in this section.  In addition, we will not pay for any loss that is a consequence of loss or damage as*

*described and limited in this section.*

a.  *Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.*

b.  *Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.*

c.  *The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:*
    *(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or*
    *(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.*

\*

**F.  Additional Coverage Extensions**

\*

2.  *Water Damage, Other Liquids, Powder Or Molten Material Damage*

    *If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.*

    \*

### G. *Definitions*

\*

2. *"Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.*
   \*

   c. *Water damage means:*
      (1) *Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and*
      (2) *Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.*
      *But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.*

      *To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss,"*

> *such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.*

> CP 10 30 10 12

12.     The Policies contain the following exclusion for Mold, Bacteria, Virus and Organic Pathogen Liability, which states:

> ### EXCLUSION – MOLD, BACTERIA, VIRUS AND ORGANIC PATHOGEN LIABILITY

> *This insurance does not apply to any claim, loss, costs or expense arising from any actual or alleged:*

> 1.  *"bodily injury", "property damage", "personal and advertising injury";*
> 2.  *damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space; or*
> 3.  *fines, penalties and attorney fees, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens;" or*
> 4.  *litigation or administration procedure in which an insured may be involved as a party;*

> *arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape of "organic pathogens", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.*

> *In addition, this insurance does not apply to any alleged "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense including but not limited to fines, penalties and attorney fees, arising out of or related to any form of "organic pathogens", whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release, or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any insured is alleged to be direct or vicarious. This exclusion also applies whether or not such injury,*

*damage, devaluation, cost or expense is expected or intended from the standpoint of any insured.*

*"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, biogenic aerosol, or scent.*

*AGL-054 03-13*

13.     Policy No. M226000444-1 (2020-2021) includes a Limitations on Coverage for Roof Surfacing endorsement which states, in part, as follows.  The Property at issue in this action is Premises Number 1.

### *LIMITATIONS ON COVERAGE FOR ROOF SURFACING*

### *SCHEDULE*

| *Premises Number* | *Building Number* | *Indicate Applicability (Paragraph A. and/or Paragraph B.)* |
|---|---|---|
| *1* | *1* | *A & B* |
| *2* | *1* | *A & B* |
| | | |
| *Information required to complete this Schedule, if not shown above, will be shown in the Declarations.* | | |

A.     *The following applies with respect to loss or damage by a Covered Cause of Loss (including wind and hail if covered) to a building or structure identified in the Schedule as being subject to this Paragraph A.:*

   *Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.*
   *\**

B.     *The following applies with respect to loss or damage by wind and/or hail to a building or structure identified in the Schedule as being subject to this Paragraph B.:*

   *We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused*

*marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.*

C. *For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.*

*CP 10 36 10 12*

14.     The damage alleged by Plaintiff is cosmetic only and is not covered.

15.     In the event that the reported damage to the Property was caused by a Covered Cause of Loss during the Policy periods, there is still no coverage to the extent the damage does not exceed Plaintiff's deductible:

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

*This endorsement modifies insurance provided under the following:*

> BUILDERS RISK COVERAGE FORM
> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM
> COMMERCIAL UNIT-OWNERS COVERAGE FORM
> STANDARD
> PROPERTY POLICY
> TOBACCO SALES WAREHOUSES COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Windstorm Or Hail Deductible Percentage - Enter 1 %, 2%, 3% or 5% and $1,000, $2,500 or $5,000 Minimum |
|---|---|---|
| *1* | *1* | *1 % Subject to $ 1,000 Minimum* |
| *2* | *1* | *1 % Subject to $ 5,000 Minimum* |
| | | *% Subject to $ Minimum* |

> *Information required to complete this Schedule, if not shown above, will be shown in the Declarations.*

*The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.*

*Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.*

*As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) Of Insurance are shown in the Declarations.*

### *WINDSTORM OR HAIL DEDUCTIBLE CALCULATIONS*

*A.  Calculation Of The Deductible - All Policies*

*1.  A Deductible is calculated separately for, and applies separately to:*
    *a.  Each building that sustains loss or damage;*
    *b.  The personal property at each building at which there is loss or damage to personal property;*
        *and*
    *c.  Personal property in the open.*
    *If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property.*

*2.  We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition; Agreed Value*

> *Optional Coverage; or any provision in a Value Reporting Form relating to full reporting or failure to submit reports.*

> CPACI 03 21 02 17

16.     Plaintiff's claims are barred because Plaintiff has failed to satisfy all conditions precedent to filing suit against Atlantic Casualty:

### COMMERCIAL PROPERTY CONDITIONS

> *This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.*

> \*

> **D.  LEGAL ACTION AGAINST US**

>> *No one may bring a legal action against us under this Coverage Part unless:*

>> 1.  *There has been full compliance with all of the terms of this Coverage Part; and*
>> 2.  *The action is brought within 2 years after the date on which the direct physical loss or damage occurred.*

17.     Plaintiff bears the burden to allocate between covered and noncovered damages but has failed to do so yet or cannot do so.  Additionally, Plaintiff cannot allocate between covered and noncovered damages.  Alternatively, Plaintiff has not satisfied conditions precedent as a result of his failure and/or inability to allocate between covered and noncovered damages.

18.     The Policies state:

> **A.  CONCEALMENT, MISREPRESENTATION OR FRAUD**
> *This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:*

>> 1.  *This Coverage Part;*
>> 2.  *The Covered Property;*
>> 3.  *Your interest in the Covered Property; or*

*4.  A claim under this Coverage Part.*

19.     If material misrepresentations were made in the procurement of the Policies, Atlantic Casualty gives notice and pleads that any material misrepresentation voids or limits coverage under the Texas Insurance Code provisions or common law governing misrepresentations in the insurance procurement or claim processes.

20.     The Policies state that: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured."

21.     Plaintiff bears the burden of proof to segregate damages and cannot segregate damages.  Atlantic Casualty pleads the doctrine of concurrent causation.  Plaintiff has not and cannot meet his burden of segregating harm resulting from concurrent causes.  Plaintiff fails and failed to allocate between covered and excluded perils.  Failure to segregate is fatal to recovery.

22.     Any losses or damages occurring or commencing to occur prior to the inception of the Policies are excluded from coverage, as a matter of law, pursuant to the insurance doctrines of Loss In Progress and Fortuity.  No coverage is owed because this damage was a known loss.  The roof condition is not a fortuitous loss as required for coverage.

23.     Because Plaintiff's allegations are generally based upon Atlantic Casualty's alleged failure to pay Policy benefits and Plaintiff has made no showing of an independent injury, the absence of liability for Plaintiff's alleged underlying insurance claim precludes Plaintiff's extra-contractual claims against Atlantic Casualty arising out of those allegations.

24.     Plaintiff's breach of contract claims are barred, in whole or in part, by the language of the Policies, including the terms, definitions, conditions, exclusions, endorsements, retentions, limits, and sub-limits contained within the Policies.

25.     Plaintiff cannot recover under a breach of contract claim because he cannot show that Atlantic Casualty breached any contract.

26.     Plaintiff cannot recover attorneys' fees under Chapter 38 of the Civil Practice and Remedies Code because Plaintiff cannot prove that Atlantic Casualty breached the parties' contract.

27.     Even if coverage is found, which is denied, Plaintiff's recovery is limited to any amounts for which it is responsible and Atlantic Casualty is entitled to a credit/offset for all amounts already paid by any party or entity to Plaintiff for the damages that are the subject of this lawsuit.

28.     Atlantic Casualty neither had nor breached a contractual duty or obligation to Plaintiff under the Policies, but even if it did, which is denied, any such breach did not proximately, legally, or foreseeably cause Plaintiff to sustain any damages.

29.     Atlantic Casualty would assert in the event it is found liable to Plaintiff, any such liability being expressly denied, the affirmative defenses of accord and satisfaction, release payment, credit, offset, res judicata, collateral estoppel, statute of limitations, waiver, and laches.

30.     To the extent Plaintiff either did not own the insured property or had no insurable interest in the insured property at the time of the claimed loss, there is no right to compensation regardless of the cause of loss.

31.     The statutory deadlines of Texas Insurance Code Chapter 542 do not apply after litigation was filed.

32.     Plaintiff's claims, including attorney's fees, are barred or limited to the extent Plaintiff's demand failed to comply with the requirements of Chapter 542A of the Texas Insurance Code and Texas law.

33.     The existence of coverage for the underlying insurance claim is mandatory to establish the basis of Plaintiff's claims for alleged statutory violations.  Plaintiff has failed to establish coverage under the Policies for the loss and amounts sought in this suit.

34.     This is a bona fide dispute and Plaintiff's claims are barred.

35.     Atlantic Casualty pleads that Plaintiff failed to mitigate his damages.

36.     The Policies do not permit and void any assignment of benefits by Plaintiff:

### ASSIGNMENT OF BENEFITS EXCLUSION

*No benefits under this policy may be assigned or otherwise transferred, regardless of whether made before loss or after loss, and any such assignment or transfer is void. No causes of action arising from or based on this policy may be assigned, and any such assignment is void.*

*ACI-AOBE 12 17*

37.     Atlantic Casualty hereby reserves the right to assert other defenses as additional facts are revealed during discovery.

### III.
### CONCLUSION AND PRAYER

For these reasons, Atlantic Casualty respectfully requests that the Court dismiss Plaintiff's claims against Atlantic Casualty with prejudice and award Atlantic Casualty all relief at law or in equity to which it may be entitled.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, LLP

Camille Johnson
State Bar No. 10686600
Southern Dist. Bar No. 16414
4621 Ross Avenue, Suite 300

Dallas, Texas 75204
Tel: (214) 368-1515
Fax: (214) 292-9647
camille@ssjmlaw.com

Jessica Marcoux Hall
State Bar No. 24046348
Southern Dist. Bar No. 581907
The Overlook at Gaines Ranch
4330 Gaines Ranch Loop, Suite 150
Austin, Texas 78735
Phone: (512) 347-1604
Fax: (512) 347-1676
jessica@ssjmlaw.com

**COUNSEL FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 27th day of January, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Chad T. Wilson                              cwilson@cwilsonlaw.com
Joseph Milensky                            jsimon@cwilsonlaw.com
CHAD T. WILSON LAW FIRM PLLC
455 E. Medical Center Blvd., Ste. 555
Webster, Texas 77598

**COUNSEL FOR PLAINTIFF**

_Jessica Marcoux Hall_
Jessica Marcoux Hall